Filed 1/27/21  In re Z.A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Z.A., a Person Coming Under the Juvenile Court Law. | B306872 (Los Angeles County Super. Ct. No. 18CCJP06150) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.A., Defendant and Appellant. | |

APPEAL from the supplemental jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner.  Conditionally affirmed with directions.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel and Jessica S. Mitchell, Deputy County Counsel for Plaintiff and Respondent.

——————————————

K.A. (mother) appeals from the juvenile court's supplemental jurisdictional and dispositional orders regarding her son, Z.A. Mother contends the juvenile court and respondent Los Angeles County Department of Children and Family Services (DCFS) failed to investigate adequately Z.A.'s father's claim of possible Indian heritage, as required under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and its corresponding provisions under California law (see Welf. & Inst. Code,[1] § 224 et seq.). DCFS concedes further investigation is warranted. Accordingly, we conditionally affirm the juvenile court's orders and remand for the purpose of ICWA compliance.

## PROCEDURAL HISTORY

We limit our summary to the information relevant to resolution of the single issue in this appeal.

On September 25, 2018, DCFS filed a section 300 petition seeking to detain 10-year-old Z.A. based on allegations of mother's physical abuse of Z.A., mother's mental and emotional problems, and mother's history of substance abuse and current abuse of marijuana.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

On November 5, 2018, Z.A.'s father, Robert E. (father), who lived in Georgia, informed DCFS that he believed he had Apache and Cherokee heritage. That same day, DCFS sent ICWA notices to three Cherokee and eight Apache tribes as well as the Secretary of the Interior and the Bureau of Indian Affairs.

The ICWA notice sent to the Cherokee tribes indicated father had Cherokee heritage through his father (paternal grandfather). The notice listed paternal grandfather's name, stated that his date and place of birth were unknown, and that father had not had contact with him since father was a baby and had no further information.

The ICWA notice sent to the Apache tribes indicated that father had Apache heritage through his mother (paternal grandmother) and his grandmother (paternal great-grandmother). The notice listed the names, dates of birth, and places of birth of both paternal grandmother and paternal great-grandmother, as well as paternal grandmother's former and current addresses.

On November 26, 2018, father filed an ICWA-020 form, parental notification of Indian status, indicating he "may have Indian ancestry," with "Cherokee" written in as the name of the tribe. At a hearing that same day, at which father was not present, the juvenile court noted that father "claimed possible Cherokee ancestry," and ordered DCFS "to conduct a full I.C.W.A. investigation." The court directed DCFS to "interview" father "and send notices to the Cherokee tribes and provide the notices when the pretrial conference is going to be heard."

On January 28, 2019, DCFS submitted to the juvenile court return receipts indicating the ICWA notices had been received by

3

the three Cherokee tribes, the Secretary of the Interior, and the Bureau of Indian Affairs.

On May 30, 2019, DCFS submitted to the juvenile court responses from the three Cherokee tribes indicating that Z.A. was not an Indian child in relation to those tribes. DCFS requested that the juvenile court "find that this is not an ICWA case."

Father was not present at the adjudication hearing on June 27, 2019. After the juvenile court ruled on the section 300 petition and sustained three of the counts, father's counsel objected that the ICWA notices were not sufficient. Counsel for DCFS noted that the three Cherokee tribes had responded to the notices and indicated that Z.A. was not a member or eligible for membership in the tribes. The juvenile court stated, "Yes. I do see that. So that's over [father's counsel's] objection." The minute order from the hearing did not mention ICWA. Z.A. was placed with mother.

DCFS's subsequent status review report, filed December 11, 2019, stated, "The Indian Child Welfare Act does not apply."

The juvenile court held a hearing on December 19, 2019. The minute order issued following the hearing stated, "Father's counsel to obtain information regarding ICWA from his client and provide it to Court . . . .". The record on appeal does not contain a reporter's transcript of the hearing.

On December 26, 2019, DCFS filed subsequent and supplemental dependency petitions under sections 342 and 387 seeking to detain Z.A. from mother, based on mother's failure to comply with her court-ordered case plan. The detention report stated that ICWA "does not apply." The jurisdiction and

4

disposition report stated that DCFS had "previously completed ICWA notices due to father claiming Cherokee heritage," and that DCFS on May 30, 2019 had submitted the responses from the Cherokee tribes to the juvenile court. The report stated, "[DCFS] has not received any information to support that anyone in this family has Indian heritage," and "respectfully recommends that the Court find that ICWA does not apply." (Bold & underscoring omitted.)

On June 24, 2020, the juvenile court sustained the section 387 supplemental petition and dismissed the section 342 petition as duplicative. ICWA was not addressed at the hearing or in the minute orders.

Mother timely appealed.

## DISCUSSION

Mother contends DCFS's inquiry into father's Indian heritage, as required by ICWA, was inadequate. Specifically, she contends DCFS should have interviewed paternal grandmother, whom father identified as the source of his Apache heritage, and who may have had further information about paternal grandfather, whom father identified as the source of his Cherokee heritage.

DCFS, in lieu of a respondent's brief, filed a letter conceding "that initial and further inquiry into the biological father's claim of possible Apache and/or Cherokee Indian heritage is warranted."

The juvenile court and DCFS "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian,

5

extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (*Id.*, subd. (b).) If, through this initial inquiry or otherwise, there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required, including interviews of parents and extended family members. (*Id.*, subd. (e).)[2]

In the instant case, the record does not show that DCFS satisfied its duty of initial inquiry, because there is no indication that it contacted or attempted to contact paternal grandmother, even though father provided her name and address and stated that she was the source of his Apache heritage. As mother notes, paternal grandmother may also have information about paternal grandfather.

Although the three Cherokee tribes to which DCFS provided notices concluded that Z.A. was not an Indian child in relation to those tribes, the information in those notices was sparse, and it is conceivable paternal grandmother or paternal grandfather can provide additional information that will be of use to the tribes in determining Z.A.'s status.

Also, the record does not indicate that DCFS received any response from the Apache tribes, or on what basis, if any, DCFS

---

[2] The legislature amended section 224.2, subdivision (e) last year, effective September 18, 2020, which post-dates the rulings in this case. (Stats. 2020, ch. 104, § 15.) The amendments, inter alia, provide guidance as to under what circumstances there is "reason to believe" a child is an Indian child, thus triggering the duty of further inquiry. (§ 224.2, subd. (e)(1).) Because DCFS concedes that the *initial* ICWA inquiry in the instant case was lacking, we need not address whether DCFS also had a duty of further inquiry.

6

concluded there was no reason to believe Z.A. was an Apache child. We recognize that father, weeks after stating he had Apache and Cherokee ancestry, filed an ICWA-020 form listing only Cherokee ancestry. The record does not indicate whether DCFS or the juvenile court followed up with father about this inconsistency, so it is unclear if father's omission of Apache ancestry from the ICWA-020 form was intentional.

Courts have held that failure to comply with ICWA requirements is not jurisdictional error, and does not require the reversal of juvenile court orders apart from orders terminating parental rights. (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 385.) Instead, the proper remedy is to conditionally affirm the supplemental jurisdictional and dispositional orders and remand for the limited purpose of ICWA compliance. (See *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1388.) We follow that course here.

## DISPOSITION

The juvenile court's supplemental jurisdictional and dispositional orders are conditionally affirmed, and the matter remanded for the limited purpose of compliance with ICWA and related California law. The juvenile court shall direct DCFS (1) to conduct a more thorough inquiry of Z.A.'s possible Indian ancestry, and to provide the juvenile court with documentation of the steps taken in that inquiry; (2) if appropriate, to provide proper notice to any relevant tribes, the Bureau of Indian Affairs, and the Secretary of the Interior as required by ICWA; and (3) to submit those notices and any responses thereto to the juvenile court. The juvenile court thereafter shall make findings concerning the adequacy of DCFS's compliance with ICWA's inquiry and notice requirements and the

7

applicability of ICWA to this case. If the juvenile court concludes that Z.A. is an Indian child, it shall conduct further proceedings in accordance with ICWA and related California law.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:


ROTHSCHILD, P. J.



FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.